No. 14211

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

MARGE KIS and ROBERT HAPP,

                    Plaintiffs and Appellants,

        -vs-

HARRY PIFER,

                    Defendant and Respondent.

---

Appeal from:  District Court of the Eleventh Judicial District,
              Honorable James M. Salansky, Judge presiding.

Counsel of Record:

        For Appellants:

        H. James Oleson argued, Kalispell, Montana

        For Respondent:

        Warden, Walterskirchen and Christiansen, Kalispell, Montana
        Frederick F. Sherwood argued, Kalispell, Montana
        McGarvey, Lence and Heberling, Kalispell, Montana

---

                            Submitted:  November 17, 1978

                              Decided:  DEC 20 1978

Filed:  DEC 1978

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

The District Court, Flathead County, sitting without a jury, dissolved the parties' partnership and ordered an accounting and the assets distributed. Plaintiff, Marge Kis, appeals from the court's order denying her motion to amend the findings of fact.

In August 1973, Marge Kis, Robert Happ and Harry Pifer entered into a verbal partnership agreement for the purpose of buying real property in Flathead County, Montana. The parties intended to realize a profit by developing the property and reselling it. The agreement contemplated that each of the parties would contribute funds periodically and that such contributions would be approximately equal between the parties, as circumstances permitted and the needs of the partnership dictated. It was further agreed that each of the parties would own a one-third interest in the properties purchased.

The partnership purchased a tract of land in October, 1973, known for purposes of this appeal as the "Meridian Road" property. Contributions for purchase of the Meridian Road property were made in cash in the following amounts: Marge Kis -- $6,000.00; Robert Happ -- $4,000.00; Harry Pifer -- $8,000.00, of which the amount of $2,000.00 was later refunded to him out of partnership funds. The total purchase price of the land was $35,000.00, so Marge Kis obtained a loan of $20,000.00 from her father to pay the remainder owing. This loan was later repaid out of the proceeds of a loan against the land, obtained from a commercial lending institution in Kalispell, Montana. Title to the property was taken in the name of Harry Pifer only, by mutual consent and for the convenience of the parties. Consequently, Pifer signed the note and mortgage when the loan against the property was obtained.

-2-

In 1974, the parties constructed eight storage units on the Meridian Road property. In 1975, it was agreed that additional units were necessary as well as two larger structures for rental purposes. Harry Pifer supervised the construction which was financed from the joint funds of the parties and $20,000.00 deposited by Marge Kis.

During the spring of 1976, Harry Pifer assumed control of the Meridian Road property and advised plaintiffs that he considered himself its sole owner.

Plaintiffs instituted this action July 14, 1976, seeking a dissolution of the partnership and an accounting of its assets. The District Court entered its findings of fact, conclusions of law, order and decree on October 24, 1977. Subsequently, plaintiff Marge Kis moved to amend findings of fact No. 20, which concerned the construction of the additional storage units and two larger structures. Finding of fact No. 20 states:

> "20. That such construction was financed initially from the joint funds of the parties and from $20,000 deposited by Marge Kis which represents additional consideration for the deed from Defendant Harry J. Pifer to her and which deed transferred his interest in the Lake View Arms property in Whitefish, Montana, said property not being involved in the partnership at hand."

The finding was made on the basis of testimony by Harry Pifer. Plaintiff contended that the court should have believed her testimony on the matter, rather than Harry Pifer's, because his credibility had been impeached on another issue, while plaintiff's credibility had never been impeached. The District Court denied the motion and this appeal followed.

1. Did the District Court improperly make finding of fact No. 20, since it had been agreed that the trial would be in two phases -- first, a determination of who owned the Meridian Road property, and then an accounting of partnership property?

-3-

2.   If the finding of fact was properly made, did the District Court abuse its discretion by ruling in defendant's favor, after his credibility had been impeached on a separate matter?

Plaintiff contends she understood that the trial would be conducted in two phases.  Specifically, the first phase would be limited to deciding whether Harry Pifer or the partnership owned the Meridian Road property.  In the second phase an accounting of partnership matters would take place. Plaintiff states she withheld evidence relevant to the Meridian Road dispute because of this "understanding".

We find that, because of developments in the course of the proceedings, plaintiff was fully aware that the District Court would be making a finding concerning the nature of her $20,000.00 contribution.

Count II of defendant's counterclaim, filed August 19, 1976, clearly placed the issue concerning the nature of plaintiff's $20,000.00 contribution before the court. Defendant's prayer under Count II stated:

> "That the plaintiff, Marge Kis, be required to
> accept the transfer of the defendant's equity in
> the Whitefish Arms property, as a full satisfaction
> of any monies advanced by Marge Kis personally, and
> particularly, the sum of $20,000.00 for the improve-
> ment of the Meridian Road property;"

Plaintiff moved to strike the count on the grounds that it was redundant and immaterial to the dispute.  Her motion was denied January 11, 1977.  At this point plaintiff was on notice that the court would be deciding the issue.

At the conclusion of the trial plaintiff offered a finding of fact on the precise issue she now contends she understood would be decided in a subsequent proceeding:

> "XX.   That such construction was financed
> initially from the joint funds of the parties and
> from a $20,000.00 loan made by Marge Kis to the
> joint operation of the parties which loan has
> never been repaid and is still outstanding."
> (Page 6 of Proposed Findings of Fact and Con-
> clusions of Law of Plaintiffs.)

-4-

On October 25, 1977, the day after the District Court entered its findings of fact, conclusions of law, order and decree, plaintiff filed a document entitled, "Exceptions to findings of fact and motion to amend same." Specifically, plaintiff excepted to finding of fact No. 20, contending that her testimony should have been believed rather than the defendant's, and that the finding should have been made in her favor. She did not contend that the court should not have made any finding on the subject, as she has in this Court, rather she contended the result of the finding was improper.

Plaintiff's actions during the course of the trial demonstrate that she was fully aware that the court would be resolving the issue concerning the nature of her $20,000.00 contribution.

Alternatively, plaintiff contends the District Court abused its discretion by relying on defendant's testimony, rather than hers, to make finding of fact No. 20. The following dialogue between plaintiff Happ's counsel and defendant is offered to show that defendant's credibility was impeached and that he should not have been believed on any point.

> "Q. And did anybody else put any money in at that time in connection with that purchase? A. Yes, my father.
>
> "Q. And who and how much, as you recall? A. My father lent me $20,000.00 And Marge --
>
> "Q. Just a minute. Let's get to that now. You said your father lent you $20,000.00? A. That is correct.
>
> "Q. Did you give him a note for it? A. No.

"Q. And was any note given to your father for it?
A. Not to my knowledge at that time.

"Q. Well, did you find out later that any note was given? A. Yes, Sir.

"Q. Okay. And who gave that note? A. Marge did.

"Q. So Marge in effect borrowed the money from your father on her note for $20,000.00? A. No. I borrowed the money but she signed the note.

"Q. Were you here when your father testified last fall, when the poor man broke down and cried on the witness stand, and we had to take a recess, Mr. Pifer. When he stated that he loaned the money to Marge, he was dealing with Marge. Are you now saying that he was lying? A. No. Mr. Warden.

"Q. Your own father? A. That

"Q. Answer yes or no. Answer the question as I asked. A. No, he is not lying.

"Q. Then he loaned the money to Marge on Marge's note and that went into evidence at that time. It is in the Court file. A. Yes."

The $20,000.00 referred to above is the contribution made in October 1973, for the purchase of the Meridian Road property, not the $20,000.00 which is the subject of finding of fact No. 20.

> "There is a general principle of law that where a witness has testified falsely to some material matter in a case, his testimony in other respects may be disregarded unless it is corroborated by other proof . . . In order for the principle to be operative, the false testimony must be upon a point material to the issue . . . The principle or maxim above stated as to disregarding the testimony of a witness who has knowingly testified falsely on a material issue does not necessarily mean that the jury is required to reject the rest of the witness' testimony . . . The right and the duty of the jury to determine to what extent they believe or disbelieve the witness thus continue." 81 Am.Jur.2d Witnesses §669.

To a similar effect, we stated in Batchoff v. Craney (1946), 119 Mont. 157, 172 P.2d 308:

". . . [W]hile proof of falsity in one part of a witness' testimony, inconsistent statements at other times, contradictory evidence, and reputation may discredit the witness, such proof goes only to the credibility of the witness, of which the jury remains the sole judge, as well as the weight to be given thereto . . . [A]lthough the jury may reject the false testimony and assume regarding the rest of it, an attitude of distrust, the jurors may render a verdict based upon the testimony of such witness if after examination they find it worthy of belief."

The District Court was the trier of fact in the instant case. The dialogue offered by plaintiff was not essential to the issue which was resolved by finding of fact No. 20. Even assuming defendant was impeached on the earlier issue, the court was not bound to rule against him on every fact issue in the trial.

We will not set aside findings of fact unless they are clearly erroneous and we will give due regard to the opportunity of the trial court to judge the credibility of the witnesses. Rule 52, Mont.R.Civ.P.

The decision of the District Court is affirmed.

_____
                  Justice

We Concur:

_____
       Chief Justice

_____

_____
         Justices

Mr. Justice John Conway Harrison dissenting:

I dissent.

_____
                  Justice